977 F.2d 585
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Warren H. SHAFFORD, Plaintiff-Appellant,
v.
CHICAGO BOARD OF EDUCATION, Defendant-Appellee.
 No. 91-3559.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 6, 1992.
Decided Oct. 8, 1992.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division, No. 91 C 3164; Milton I. Shadur, Senior Judge.
 
 
 1
 N.D.Ill.
 
 
 2
 AFFIRMED.
 
 ORDER
 
 3
 Warren Shafford, a former school janitor, sued the Chicago Board of Education (Board), claiming that it had violated his rights under 42 U.S.C. §§ 1981, 1983, and 2000e, et seq. (Title VII). The district court dismissed each of these claims as time-barred, and we affirm.
 
 I. BACKGROUND[1]
 
 4
 On February 28, 1986, Shafford was arrested for an alleged sex offense. At the time he was employed as a janitor at an elementary school. When school officials heard of the arrest they temporarily suspended him from February 28 to March 6, and then placed him on indefinite suspension without pay beginning March 7, 1986. Appellant's Appendix at 4. Shafford was told that if he was eventually cleared of all charges he could report to the Bureau of Career Service Personnel (Bureau) to discuss job opportunities or potential reinstatement. In time Shafford was cleared of the charges, and he reported to the Bureau on October 23, 1987, seeking work. At that point, however, budgetary cuts and workforce reductions had eliminated all vacancies. Still, the Bureau told him that he would be considered for any new vacancies for which he was qualified. As it turns out the Board has never offered Shafford a new position and he remains unemployed, though for some reason his name is apparently still on the Board's payroll list.
 
 
 5
 On May 22, 1991, Shafford filed suit against the Board in federal court. As amended, the complaint charges that the Board violated his due process rights by not giving him a hearing before his termination. Shafford alleges that he was a Career Service Employee of the Board, and that § 4-6 of the Board's own rules guarantees all such employees a pre-termination hearing governed by the procedures outlined in Ill.Rev.Stat. ch. 122, § 34-15. See Appellant's Appendix at 14. He also maintains that the Board violated his equal protection rights by treating him differently from white employees charged with crimes. These two claims fall under 42 U.S.C. § 1983. In addition, though with little clarity, Shafford makes claims under 42 U.S.C. §§ 1981 and 2000e, et seq. (Title VII), as well as a pendent state-law claim for breach of contract.[2]
 
 II. DISCUSSION
 A. Civil Rights Claims
 
 6
 The sole issue on appeal is whether Shafford's claims are time-barred. Three of the claims, those under 42 U.S.C. §§ 1981 and 1983, are governed by Illinois' two-year statute of limitations, Ill.Rev.Stat. ch. 110, § 13-202. Wilson v. Giesen, 956 F.2d 738 (7th Cir.1992); Smith v. City of Chicago Heights, 951 F.2d 834, 836 n. 1 (7th Cir.1992). As with any statute of limitations case, the first question is when the plaintiff's claim accrued. Claims under §§ 1981 and 1983 accrue "when the plaintiff knows or should know that his or her constitutional rights have been violated." Wilson, 956 F.2d at 740. Under this standard Shafford's claims accrued when he knew or should have known that he had been discharged by the Board, since at that point it ought to have been clear that he had been denied a hearing and possibly treated differently from white employees. Documents attached to the complaint make determination of that date relatively easy. A memo prepared by Helen Mardis, the Bureau coordinator, directly informed Shafford that the Board considered him terminated as of March 7, 1986, the start of his indefinite suspension. Appellant's Appendix at 13 ("Mr. Shafford was terminated on March 7, 1986.") This memo was written on October 27, 1987, four days after Shafford had returned to the Bureau but been told there were no job openings, and a copy was sent to him. Along with clarifying that the plaintiff had been terminated, the memo also established the Board's stance regarding his future prospects: "Mr. Shafford was informed that as vacancies occur in temporary positions for which he is qualified, his application for employment will be given every consideration." Id. This made it plain that there was no job waiting for Shafford, and that he had simply been thrown back into the applicant pool. Thus his claims must have accrued, at the latest, when he received his copy of the memo on or about October 27, 1987. Consequently, his claims would be barred by the two-year limitations period unless that period was tolled for at least nineteen months between October 27, 1987 and the filing of the complaint on May 22, 1991. Shafford advances two arguments for tolling: equitable estoppel and continuing violation.[3]
 
 1. Equitable Estoppel
 
 7
 Shafford maintains that the defendants should be estopped from using the statute of limitations as a defense because the Board deliberately lulled him into not suing sooner by promising to consider him for future vacancies. A recent opinion reviewed this circuit's approach to equitable estoppel in statute of limitations cases:
 
 
 8
 We have held that equitable estoppel is available only under limited circumstances. Among other factors, courts should look for a showing of the plaintiff's actual and reasonable reliance on the defendant's conduct or representations and evidence of improper purpose on the part of the defendant and the defendant's actual or constructive knowledge of the deceptive nature of its conduct.
 
 
 9
 * * *
 
 
 10
 In essence, equitable estoppel focuses on whether the defendant acted affirmatively to stop or delay the plaintiff from bringing suit within the limitations period.
 
 
 11
 Smith, 951 F.2d at 840-41 (citations and quotation marks omitted). In this case the defendant's only affirmative conduct was telling Shafford that it would consider him for future openings. Despite his allegations to the contrary, the October 27, 1987 memo discloses no promise to employ Shafford or to give him the next available job; it was more along the lines of "we'll keep your resume on file." His interpretation of the Board's statements as a guarantee of future employment can scarcely be deemed reasonable. Cf. Delaware State College v. Ricks, 449 U.S. 250, 261 (1980) (limitations period not tolled while plaintiff pursued grievance procedure: even though defendant stated it would consider rehiring plaintiff if grievance was successful, the mere possibility of reconsideration did not render defendant's initial decision any less final). Further, Shafford does not argue that the Board failed to consider him for jobs, only that it failed to rehire him--something it never promised to do. Without some affirmative act or misrepresentation by the defendant to mislead the plaintiff into sleeping on his rights, there is no basis for applying equitable estoppel. Smith, 951 F.2d at 841; Aungst v. Westinghouse Elec. Corp., 937 F.2d 1216, 1225 (7th Cir.1991); but see Cange v. Stotler & Co., 826 F.2d 581, 587 (7th Cir.1987) (no need for defendant to act intentionally to be estopped). The defendant here told the truth--Shafford had been terminated but would be considered if something came up--and he had no reason to delay filing suit once he knew he had been discharged without a hearing.
 
 
 12
 The cases Shafford cites to support his equitable estoppel argument are not persuasive. The most recent, Rhodes v. Guiberson Oil Tools Div., 927 F.2d 876 (5th Cir.1991), applied equitable estoppel to an age discrimination claim where the defendant told the plaintiff he was being terminated because of a workforce reduction, but that it would consider rehiring him in the future. The court believed that this was an implicit promise that the plaintiff would not be replaced, while in fact he was replaced by a younger man. Since the plaintiff had no reason to suspect his rights had been violated until he discovered the defendant had replaced him, contrary to its earlier representations, the court applied equitable estoppel to toll the limitations period. Id. at 880-81. In contrast, Shafford was not misled about the reasons for his termination or the chances of being rehired. Once the Board chose not to rehire him after he had been cleared of the charges, he either knew or should have known that his due process and equal protection rights may have been violated. No one hid the fact that he had been terminated without a hearing. A similar distinction may be drawn between this case and the others cited by Shafford, Wilkerson v. Siegfried Ins. Agency, Inc., 621 F.2d 1042 (10th Cir.1980) (plaintiff misled as to the reason for her termination, preventing discovery of potential discrimination claim); Reeb v. Economic Opportunity Atlanta, Inc., 516 F.2d 924, 931 (5th Cir.1975) (same).
 
 2. Continuing Violation
 
 13
 Shafford's alternative claim is that the statute has not run because the Board's violation of his rights continues to this day: "Every day without a hearing, assignment and pay is another violation of plaintiff's rights." Appellant's Br. at 19. This is an attempt to invoke the continuing violation doctrine, which "allows a plaintiff to get relief for a time-barred act by linking it with an act that is within the limitations period." Selan v. Kiley, 969 F.2d 560, 564 (7th Cir.1992). Under Shafford's theory, however, no § 1983 claim would ever be time-barred, as the plaintiff could simply argue that the harm continues until relief is received. The continuing violation doctrine is not so easily applied; the effects of an illegal act are different from the act itself, and the fact that the effects linger will not toll the limitations period. See Selan, 969 F.2d at 565 n. 3 (noting that "the present-effects-of-past-discrimination theory [ ] was rejected by the Supreme Court in United Air Lines v. Evans, 431 U.S. 553 (1977)").
 
 B. Title VII Claim
 
 14
 While plaintiff does not appear to contest the district court's dismissal of his Title VII claim, it is nevertheless clear that it too is time-barred. Because Illinois has a state law giving Title VII claimants recourse to a state agency, the time for filing a charge with the EEOC is extended to 300 days from the usual 180. Gilardi v. Schroeder, 833 F.2d 1226, 1230 (7th Cir.1987). Shafford did not file with the EEOC until January 9, 1989, more than a year after the alleged deprivations. Since there was no reason to toll the limitations period during this year, the claim was properly dismissed as untimely.
 
 
 15
 For the above reasons, we AFFIRM the district court's dismissal of Shafford's complaint.
 
 
 
 [1]
 Because the case was dismissed under Fed.R.Civ.P. 12(b)(6), the court must accept all well-pleaded factual allegations in the complaint as true, though review of the dismissal itself is de novo. Prince v. Rescorp Realty, 940 F.2d 1104, 1106 (7th Cir.1991)
 
 
 [2]
 After finding the federal claims untimely, the district court dismissed the state claim for lack of jurisdiction. United Mine Workers v. Gibbs, 388 U.S. 715, 726 (1966)
 
 
 [3]
 Shafford's attorney raised a third tolling possibility at oral argument, when he informed the court of his recent discovery that Shafford had been involved in an auto accident thirty days after his termination and developed a "cognitive defect" from which he is still suffering, and that the defect prevented him from pursuing his claim. See Ill.Rev.Stat. ch. 110, § 13-211. This argument was not made to the district court, though it was available at the time, and therefore we need not address it